J. E. BONEBRAKE v. WILSON N. KING.

UNCONDITIONAL GUARANTY — *Notice of Non-Performance.*   No notice of
the default of a principal need be given in order to charge an un-
conditional guarantor of an existing demand or liability, if the
guaranty is made after the default of such principal.

*Error from Dickinson District Court.*

THE material facts are stated in the opinion.   The case
was heard on May 5, 1892, and at the session of the court in
July following it was decided, and there was filed herein an
opinion (syllabus and opinion by SIMPSON, C.), recommend-
ing that the judgment of the court below be reversed.   By
the court, it was so ordered — all the justices concurring.
The syllabus therein formulated and declared to be the law
is as follows:

"When a person who has money in his hands belonging to
a contractor makes a collateral guaranty of the performance
of a building contract, the guarantor is entitled to notice of
non-performance by the contractor within a reasonable time
after the failure to perform.   After months have elapsed, and

the guarantor has settled with his principal, and paid over to him all sums of money in his hands, a notice is too late."

On July 18, 1892, the defendant in error filed a motion for a rehearing, which was argued on November 4, 1892. On January 7, 1893, the court sustained the motion, and filed herein the new syllabus, *supra*, and the opinion, *infra*.

*Stambaugh, Hurd & Dewey* — on the original hearing — contended for plaintiff in error, as follows:

Plaintiff in error claims that, on the 5th day of March, 1886, he became a guarantor for the completion of the building by McCoy; that he had money and property in his possession belonging to McCoy to protect himself, and that he could only be held on his guaranty by notice from King within a reasonable time after the failure of McCoy to complete his contract; that the plaintiff below having failed to plead notice or demand, his petition did not state facts sufficient to constitute a cause of action against the defendant, and, having failed to prove notice or demand, the verdict of the jury should have been for the defendant below, for the reason that demand and notice were necessary in order to hold the guarantor. We cite: *Oxford Bank v. Haynes*, 8 Pick. 423; *Babcock v. Bryant*, 12 id. 133; *Dole v. Young*, 24 id. 250; *Ilsley v. Jones*, 12 Gray, 260; *Virden v. Ellsworth*, 15 Ind. 144; *Smith v. Banebridge*, 6 Blackf. 12; *Gaff v. Sims*, 45 Ind. 262; *Craft v. Isham*, 13 Conn. 28; *Sylvester v. Downer*, 18 Vt. 32.

The rule of law seems to be that, in guaranties of this kind, demand of performance must be made upon the principal, and the guarantor must be notified within a reasonable time of the failure of the principal to perform, and that in the absence of demand or notice within a reasonable time and before the commencement of the suit, action against the guarantor cannot be maintained. Many authorities hold that, when the time of payment and the amount to be paid are fixed in the contract, no demand or notice to the guarantor is required; but, in all cases like this, where the time within

which the contract is to be performed and the liability of the guarantor as to the amount for which he may be held is uncertain and contingent, demand upon the principal and notice to the guarantor is essential.   If we are correct in that view of the law, the court committed error in overruling the objection to the introduction of any testimony and in refusing to instruct the jury to find for the defendant.

*John H. Mahan*—on the original hearing—contended for defendant in error, as follows :

Under the contract, King was entitled to a reasonable rental value of the property from January 1, 1886, as damages. Bonebrake was bound to know — must be presumed to have known—everything about the contract when he signed this agreement; must have known it was then broken and that damages had accrued.   He needed no notice to apprise him of McCoy's default.   Under this contract, it was then his duty to see that reparation was made as fast and as far as it could be done.   It was not at any time incumbent on King to say to him, "McCoy has failed to perform;" he knew it; nor to say, "I demand of you to keep your contract," as there never was a moment from the time he signed the agreement that he had not an immediate duty to perform under it.   It is true that the trial court ruled, in the admission of evidence and in its instructions, that we could not claim damages for loss of use of building until Bonebrake had a reasonable time after he signed the contract to complete the work.   But this is not the wording of the paper, and is not the law as applicable to the facts of this case.   Note the reading of the paper. Even under this rule he was bound to at once proceed without notice.

Upon the subject of Doctor King's paying the material men, see § 2 of chapter 141, Laws of 1872; Comp. Laws of 1881, p. 689; Gen. Stat. of 1889, ¶ 4735, (Code, § 632.)   If the money was due for this material, we had a right to pay it, and neither McCoy nor Bonebrake could complain.

*Per Curiam:* On the 12th day of December, 1885, King entered into a contract with McCoy to buy four lots in Abilene, upon which McCoy was then constructing four buildings. Bonebrake was furnishing the money to construct the buildings, and paying it out as the work progressed. Two of the buildings, being constructed on lots 6 and 8 on Cedar street, were to be finished by January 1, 1886. McCoy had mortgaged these lots to Bonebrake before King's contract. The buildings were not completed March 5, 1886, and were never completed by McCoy or Bonebrake. King was to take the lots subject to a mortgage of $14,000, and deed McCoy certain land, described as "section 35, township 12, range 1 east." The amount of money loaned by Bonebrake to pay for the lots and buildings was $4,000 on each, but King was to assume a lien, in all, of $14,000. On the 5th day of March, 1886, Bonebrake became anxious to get the section of land referred to, and made the contract sued on in consideration of the deed from King. This contract was—

"*W. N. King:* I will stand responsible for the completion of said buildings on lots 6 and 8, Cedar street, and paid for according to contract of David McCoy with W. N. King.
"March 5, 1886.       [Signed]      J. E. BONEBRAKE."

This action was brought by King against Bonebrake on the 27th day of August, 1888, to recover $800 on the written contract of Bonebrake to complete the buildings. At the May term, 1889, the jury returned a verdict for him for $520. Judgment was entered thereon, with costs.

In the original opinion handed down by the commission, it was stated by SIMPSON, C., that—

"By the terms of the original contract, the buildings should have been completed by January 1, 1886. By a subsequent agreement, the time for completion was extended until the 1st day of July, 1886, conditioned that McCoy should pay King a monthly rental of $107.50, commencing on the 1st day of April, 1886."

The reference in the opinion of the commission to the ex-

tension of the contract guaranteed by Bonebrake was an unintentional error, resulting from statements contained in the original brief of plaintiff in error. The contract for the completion of the buildings on lots 6 and 8 on Cedar street was never extended or changed. The former opinion handed down was founded upon this extension; hence that opinion is not applicable to the actual facts presented in the record. It clearly appears from the record that, at the time Bonebrake made his contract of guaranty, the original contractor, McCoy, was in default upon his contract for over two months. This being the case, Bonebrake was not entitled to any notice from King of the default. Brandt on Suretyship and Guaranty says:

"The rule that no notice of the principal's default need be given in order to charge the unconditional guarantor of an existing demand is specially applicable to a guaranty of a debt made after the debt is due. In such case, the principal is in default when the guaranty is made, and the reasons requiring notice do not apply." Vol. 1 (2d ed.), § 201.

Bonebrake alleged in his answer that—

"At the time the buildings mentioned in plaintiff's petition were or should have been completed, and for a long time prior to this, defendant had under his control and in his possession moneys and property arising out of the mortgages upon the buildings negotiated by David McCoy, and otherwise provided by said McCoy, with which to protect himself against loss by reason of having signed the agreement set out in the petition concerning the completion of said buildings, and that on or about the — day of ———, 188–, and at the time when the buildings were or should have been completed, this defendant had a talk with the plaintiff, and was informed by the plaintiff that the buildings mentioned in the petition were and had been by McCoy fully completed in accordance with the terms of the agreement between McCoy and plaintiff; and this defendant, relying upon this statement, and believing that there was nothing further for McCoy to do with respect to the buildings in order to fully release him from his obligations under the agreement and promise, made a settlement with McCoy, and parted with and released his control and possession of all moneys and properties so pro-

vided and so left in his control by McCoy, and with which he could have completed the buildings, and protected himself against loss by reason of any failure of McCoy to have complied with his contract with plaintiff; that said plaintiff, at all times herein referred to, well knew that this defendant was holding and retaining control of funds and property of McCoy, for the purpose of seeing that the same were applied to the payment of the cost of the erection and construction of the buildings; that McCoy is now a non-resident of the state of Kansas, and, this defendant is informed and believes, is wholly and entirely insolvent; that if ,this defendant is required to pay anything because of the failure of McCoy to complete the buildings in accordance with the terms of the contract, such payment will be a total loss to him."

Upon the trial the court instructed the jury as follows:

"The defendant admits the execution of the guaranty, or at least it is not denied, and, not being denied, it is admitted; but alleges that he had a lot of property and money in his hands belonging to McCoy, which he was holding as a guaranty, or as protection to himself as against this guaranty, in the event McCoy did not complete the buildings, and with which he would have been enabled to indemnify himself from the property and money in his hands; that while he was so holding this money and property he had a conversation with King with respect to the completion of these buildings, and he claims King told him his matters with McCoy had all been settled; that he had no claim against McCoy for the buildings; and then, on the strength of that conversation, or a conversation to that effect—and, gentlemen of the jury, you are to determine this from the evidence; it is not for me to say— but on the strength of the statements made by King to him, he surrendered the money and property to McCoy, and for that reason he will suffer loss, if he has to pay this.   That is an affirmative issue on the part of the defendant, of which he must satisfy you by a preponderance of the testimony.   If you find from the testimony that King by his statements and conduct towards Bonebrake did induce Bonebrake to surrender the property and money he had in his possession belonging to McCoy, on the faith that King had no claim against McCoy by reason of the non-completion of these buildings, then, gentlemen of the jury, it would be a valid defense, and if you find it to be true, you will find for the defendant."

The defense alleged by the defendant was fairly submitted to the jury by the instruction of the court, but the jury found against Bonebrake. He, however, has no just cause of complaint. The credibility of the witnesses and the weight of their testimony were for the jury and the trial court, not for this court.

The reversal heretofore rendered in this court will be set aside, and the judgment of the district court will be affirmed.